Lawyers are ready, number 17-2404. Mr. Papio? Good morning, Your Honors. My name is Abraham Fernando Papio. I represent the petition in this case, Mr. Quintanilla. Those telling the past case, there's an old saying in every litigation case, there's three cases for these. Could you talk up a little? Oh, absolutely, Your Honor. There are three cases, one that you try, one that you wish you tried, and one that you should have tried. Right. And I think mine is in the latter category as well. The Board of Immigration Appeals in this case issued a two-page opinion. The second page contains one paragraph, perhaps very rude, very brief, in which the single-member board issued an opinion that, in our view, applies the willful acceptance standard to a CAD denial, as opposed to the willful blindness that this Court espoused in Suarez in 2013. We raised this issue with the BIA. Judge Kessler, the IJ, also addressed this issue in her opinion. She actually wrote a very good analysis of the split in the circuits, indicating that, in fact, this Court had adopted the willful blindness standard. And in her ultimate conclusion, she ruled that, in her view, that we hadn't met the burden. What is important about that decision is that she found my client credible. He testified that he had gang tattoos all over his body. He abandoned the gang. If he had returned to El Salvador, he would have been immediately killed by gangs, rival gangs, or the police. We presented a country conditions report as well that established that the gang violence in El Salvador is rampant. The police don't protect their citizens as they should. And they actually target gang members routinely. Now, withstanding that evidence, the IJ and the BIA, in its own opinion, applied a slightly different standard. We cannot glean from the BIA decision if they, in fact, applied a willful acceptance standard, but we think there is some language from that opinion where the single member of the board that used the word acquiescence only one time does not discuss the Suarez decision, which is troubling. Suarez is the case in point of willful blindness, and Judge Kessler was the IJ that actually discussed that case, in her opinion. So for that reason, we believe that there is at least a remand to the BIA to address the issue of the denial of CAT is appropriate. On the last issue of my brief, which is a due process claim, I tried to amend the pleadings on the day of the hearing. We initially started the case on a post-conviction basis. We filed a post-conviction petition in circuit court trying to undo the convictions of my client. We lost the post-conviction. My client elected to change tax. We consulted other counsel, and on the day of the hearing, we tried to amend the pleadings under the DiMaia case, DiMaia v. Sessions, the Ninth Circuit case. We did not previously argue the removal grounds because it was a Ninth Circuit decision. As the court may be aware, Judge Kessler is the only sitting judge in removal cases in Baltimore. She is always there, and in my previous experience, arguing the removal grounds with her would not have been fruitful. But I did nonetheless because my client asked me to. So there were substantial reasons why we believe the judge, the immigration judge, should have granted that motion to amend the pleadings based on the DiMaia case. And my client was right. I mean, the DiMaia decision eventually came out later in April of the following year, this year. We know the DiMaia decision. And he was right. My client was right. He had the right instinct to argue DiMaia, and in retrospect, I guess he should have argued it from the beginning, to preserve the issue. Judge Kessler made a halfway ruling in her opinion. Orally, she said that had I raised the issue, she would have ruled against me. But that is nowhere to be found in the written opinion from the IJ. My understanding from having done a few appeals to the BIA is that they would not have considered a constitutional claim directly from the IJ to the board, and so that's why we did not raise the constitutional claim at the BIA. The BIA made a footnote in its opinion indicating that I had not raised the removability ground, which is correct. I couldn't because when I moved to amend the pleadings, the judge denied that amendment of the pleading. I don't understand. Can you just say that again? Sure. Why couldn't you go to the BIA with your claim that the IJ erred by not allowing you to amend the pleadings? In retrospect, I should have done that. Okay. And I concede that. And that's why we have filed recently a motion to reopen raising the DiMaia issue. Can I just have another question? Yes, please. Why does the DiMaia thing matter? Aren't there two criminal convictions here and one is for one possession? There are two. Yes, Your Honor. Assuming that DiMaia would take away the robbery conviction, which is my hope if we get a remand, he would be eligible for cancellation on the firearm offense. So he could still be saved. Assuming the robbery conviction is taken away by DiMaia, he would be eligible for cancellation or removal on the firearm offense. But haven't we recently concluded that the Maryland crime of armed robbery is a crime of violence under the Force Clause? Your Honor, I'm sorry. I'm not familiar with that decision. Okay. But if we had, then there wouldn't be an argument. There wouldn't be an argument, correct, Your Honor. The only issue that would remain would be the cat denial, which we believe merits a remand based on the Suarez case, Your Honor. Unless you have further questions, that would be the... Why don't we hear from the government? You have some time. Thank you, Your Honor. Thank you. May it please the Court, I am Sarah Byram, appearing on behalf of the United States Attorney General. This Court should dismiss the petition for review. Although Petitioner's concerns of potential harm in El Salvador are sympathetic, his intentional criminal actions mean that this Court can only review legal questions or constitutional claims raised in his petition for review. But here, he challenges only the denial of his deferral of removal under the Convention Against Torture. And more specifically, the agency's determination that the evidence does not show that the Salvadorian government would acquiesce in any torture he might face. Can I ask you about this? He's got a section of the brief that's called, the BIA failed to conduct a de novo review on the IG's holding. I mean, that seems to raise a legal question that we could review, right? Could you state that again? I can't hear you. Question B. Yeah, I'm sorry. The BIA failed to conduct a de novo review on the IG's holding. The petitioner failed to show that it was more likely than not he would be tortured in El Salvador. And the question of the right standard of review we have held before is a legal question that we can review, even in this context. Under this Court's precedent in SANTA, the agency's determination about whether a government would acquiesce in a petitioner's torture is an unreviewable factual determination. I understand the outcome is not something we can review, but whether the BIA applied the correct standard of review, you don't think that's a legal question over which we have jurisdiction? But if that was the actual claim that petitioner. Well, I'm reading to you the heading of Section B. Here, the agency applied the correct standard. They applied all of the correct. Excuse me. That's not the question that was put to you, though. Do you understand what the question is? Yes. The question whether the Board applies the correct legal standard is a reviewable legal determination. But in this case, that's not what we have here. Here, the agency articulated all of the correct legal standards. Even if I agree with you on that, I'm just trying to figure out what you want us to do. I thought you thought we should dismiss this case for want of jurisdiction, but now you're saying we do have jurisdiction over at least some part of it, and I assume then you want us to dismiss that on the merits. It's our position that this Court should dismiss this petition for review because petitioner's only challenge that he is raising, which is the determination that the Salvadorian government wouldn't acquiesce in his torture. That's an unreviewable factual determination. I thought you just said that Section B raises a legal question over which we have jurisdiction. You don't think that this claim that the raw – I'm reading it to you. The BIA failed to conduct a de novo review on the IJ's holding. You don't think that raises a legal question. My apologies. Let me take a step back. Now, this Court should deny this petition for review because he solely challenges – I understand how he has it worded in his brief, but at bottom what he really is articulating is a challenge to the agency's factual determination with respect to whether or not the government would acquiesce. That is an unreviewable factual determination under Sienta v. Mukasey, which is a case that the petitioner does not even cite. It is controlling of this case, and it's directly on point. That case also involves the criminal alien, the criminal alien bar, which we have at play here, as well as his deferral obligation for which he argues simply that the evidence – the country would acquiesce in his torture. And under Sienta, the Court has unmistakably held that's an unreviewable determination. I'm sorry. I don't understand what you're saying. So you just have to go back. This is, I think, maybe the only issue in the case. So it's worth spending – I know when one's arguing, one always wants to get to one's next argument because, my God, the Court doesn't understand anything. But just bear with me on this, okay? So I thought that you agreed, and I thought it was really not contested, that we review de novo an IJ's application of the government acquiescent standard to the facts. No. No, you don't agree to that. I'm sorry. No. Let me – under this Court's precedent – That's a mixed question of law and facts. That would be contrary to everything else. Now, we don't review their factual determination de novo, right? Not under this Court's precedent in Sienta v. Mukasey. Under that case – Tell me the name of this case. Spell it out for me. Sure. I can't understand what you're saying. Sienta, S-A-I-N-T-H-A, v. Mukasey. It's quite true, because Congress doesn't want us getting involved. They've made that perfectly clear with this new statute, right? Yes. So we can't do anything. Yes. What we're talking about, and I thought was talking about here, is what the review was internally by the BIA. My apologies. I thought that we had been talking about what this Court's review was, which we have just cleared up. But what he's claiming is that there was a misapplication of the law to the facts by the agency. Yes. That's not our review. That's us determining whether the agency has used the correct standard. In this case, the agency did use the correct standard. No, but I still want to know if you claim that that's not reviewable for some reason. Yes. But I don't think you really do. But tell me. Okay. First, this Court's review of the agency's determination is unreviewable by this Court, because it's a factual determination. Now, the agency, on review, applied the correct standards, and they weighed the evidence, including the Board. Just tell me, what standard do you think the BIA, but let's just pause for a minute on the argument that the BIA applied the correct standard of review? So the Board applies clear error for the factual findings, and de novo as to the legal issues. Okay. And so the Board cites Turkson and says just that. Yes. And then it says that as to acquiescence, that is a purely factual question, which we review only for clear error. And you think that is correct? No, you don't think. I thought you'd said, you've said both. I thought you recognized that's not correct. So for the Board, that is a legal determination that they would review de novo. Yes. But you said it was reviewing acquiescence only for clear error, didn't it? To the extent that the Board may have said that, then that would be, that could be an error because the Board should be reviewing that as a legal issue, de novo, factual findings, clear error. My apologies for the confusion. Initially I thought that we were talking about the review of this court, not stepping back to the review of the court. We were talking about both. Yeah. It's confusing, but I think we all agree that the review of this court, of the BIA's standard of review, is something over which we have jurisdiction. The court has jurisdiction over the legal questions to the extent that he would raise one, then yes. Here we argue that he just challenges that factual determination. We cite DeSanta to show that, or to emphasize that this court has held that that's an unreviewable factual determination. I know the part of DeSanta you're talking about where the court says, in that case he's not really arguing about standard of review. He's just saying they applied the standard of review incorrectly, and that is they should have reversed, basically. I get that. But I sort of think here they have broken out a separate question as to standard of review. And I just, so was the board, I'm looking at page three of the record, where the board says the respondent has not established clear error in the IJ's factual finding that the Salvadoran government would not acquiesce in his torture. And then it quotes Sienta for the proposition that whether the government acquiesces is a factual finding. Do you think all of that is correct, or is it possible that there's a bit of an issue here? Because Sienta only goes to the jurisdictional question, but that in terms of the BIA's review, it ought to review acquiescence the same way it reviews everything, which is clear error for the fact and application of fact laws de novo. With respect to the board's decision, yes. There does appear to be a blurring of the line with respect to their analysis. Okay. What about the board's opinion if you look at the bottom? May I go back and bring my copy of the record up to follow up? Sure. I'm sure you're familiar with the contents enough. If you need it, we'll certainly have you go back and get it. It's where the board says, first, we agree with the immigration judge that the respondent has not established that he is more likely than not to be tortured if removed to El Salvador. And it seems to me that maybe that's the closest. I mean, it seems to me that perhaps the board is weighing in under its appropriate standard of review, but I'm not clear on it, so could you address that? What the board or the agency did is they reaffirmed the immigration judge and the immigration judge and the board, they articulated the correct legal standards for a convention claim, and then they applied the evidence, they weighed the evidence to find that the evidence that he brought, and it was his burden to show with the country condition report, which is the only evidence that he brought, that that evidence simply wasn't sufficient to show that he specifically would be tortured by or with the consent of the Salvadorian government. And so that was what the agency was doing, however inarticulate it may have been. The board specifically, though, was looking back to the IJ and affirming the IJ, where she articulated the standards in a lengthy discussion, and then simply weighed the evidence, and that evidence for the agency and that sole country condition report, which is all that was proffered, to find that he didn't show that specific. Okay, what standard did they reaffirm, as you say, the IJ? This opinion really doesn't show it, you agree, don't you? Well, as previously discussed, they do seem to have a bit of a blurring between the factual finding clear error and the legal determination of clear, or the legal determination in de novo, excuse me. Now, when you say it's a lengthy discussion, what is it, one paragraph? Oh, the immigration judge's decision. Oh, okay. The board's decision is a little bit more terse than the immigration judge's decision. Can I ask you a question, because I really, I genuinely want your input on this, because I know you see more of these cases than I do. So my concern was that maybe what the board was doing was saying, was applying Turks in, this kind of bifurcated, proper bifurcated review standard to the sort of what we think of as prong one. Is it more likely or not that torture, that the infliction of severe pain or suffering will happen? That on that they apply Turks in, and then when it came to the prong two, acquiescence, they only apply clear error review, which, P.S., is not crazy. It's not a nutty reading of science. I think it's incorrect, because that goes to our jurisdiction and not BIA review. But it's plausible to me that the BIA might be making that mistake, that it applies the bifurcated thing to prong one, and then it only applies clear error review to prong two. Is that what's going on here? I can't exactly speak for the board, but it seems that that may have been the case. I mean, SINFA does have the, you know, they do stand for the proposition that it's unreviewable factual determination. And then when we get to Turks in. Unreviewable by us. Yes. Then when we get to Turks in, the court does sort of apply that delineated with the two prongs. It's very confusing. But then the court goes on to then reaffirm SINFA, which doesn't do that. So there is a little bit of. I agree. I think it's confusing, because we never went back in Turks in to say, what does this mean for what we've already said in SINFA? There is a little bit of disconnect. And, you know, to be forthcoming, as you probably are aware, other circuits do apply that more bifurcated analysis as to both prongs. And so certainly SINFA finding it controls. But, yes, they don't. In that case, they just hold it's the unreviewable factual determination. That case deals with the acquiescence. We get to Turks in, and they, as you correctly point out, do something a little bit different, which is the bifurcated system and that delineation, and then there's never a circle back to SINFA, and they just instead reaffirm, say it was a different basis. You know, I'm really having a hard time following you. I think I know what SINFA says, and I think I know what Turks in says, and now what are you saying about this case? I mean, I didn't really think you would, the government would fight that the BIA performs a legal function when it applies the law to the facts. At this point, I'm not disputing that we were. Right. Oh, discussing here. You all have gone a step beyond me. Okay, so you agree with that. The board applies legal determinations, DeNovo, yes. With respect to Judge Harris's question, it was in Turks in, Turks in discusses the question of torture and whether or not an applicant's potential harm would arise to the level of torture, and in Turks in, what this court did was they held that that's a bifurcated analysis. There's a step one where they review the agency's factual findings as to what exactly the petitioner might suffer in terms of the harm, and then that is a factual finding with respect to what the agency found as to what petitioner may suffer in the future. Then the court said the second part of that analysis is the legal question of whether or not that harm falls within the legal definition of torture, and that's a legal question. So Turks in sets out this two-pronged approach where the first prong is reviewable. It's a factual. It's not reviewable. It's a factual finding, which is the harm that the mistreatment, what the petitioner may suffer in the future, and the agency's findings as to what harm the applicant may suffer, that's a factual finding. And then the court went on to say whether or not that potential harm falls within the legal definition of torture, that is a legal question that this court can review. And you would suggest that we apply that kind of analysis. I know it's a different question here, right? In this case, with respect to the acquiescence, Scientha controls, and that's binding. All Scientha holds is that for jurisdictional purposes, we don't have the ability to review it, but that's not the same as the standard of review that the BIA ought to use. Yes. If I understood Judge Motz's question, though, I believe that she was asking whether or not the court, with respect to acquiescence, should apply a two-prong as in Turks in. No, I'm asking what standard the BIA should have applied. With respect to legal determinations, that would be de novo. So in the acquiescence context, it would work like this, I assume. The IG's determination as to what is the government likely to do, what will happen, will the police show up or not, all of that would be reviewed for clear error. But then whether what the government will or won't do rises to the level of acquiescence, willful blindness, all of that, that would be something that the BIA ought to review de novo, even though we may not be able to review it at all. Yes. Okay. Yes. So if the BIA did not do that, here. Where is the language? I'm sorry. Excuse me. Then there is a legal, whether or not the BIA did it here is a legal issue. Whether or not, yes. And if the court finds that the agency did not perform the analysis correctly, then, of course, remand would be appropriate. Okay. Thank you. I don't think it's necessarily you. Do you have a question? No, that's okay. Simply then, just finally, with respect to the due process claim, our position is that he failed to exhaust that claim and that the Board had the ability to remedy it as it was a procedural due process claim. Okay. Could I ask you a question about the Myrie case? I mean, are you then essentially agreeing that we should be adopting or we should be ruling consistently with the decision of the Third Circuit in 2017 when they break down this dichotomy at page 517 of the opinion, talking about the Board being correct in reviewing for clear error the IJ's factual findings that the government actually actively engages against criminal gangs and the Board should have determined de novo whether these findings were sufficient to establish acquiescence. That's essentially what you're now agreeing to, that this standard set out in Myrie is the correct one for us to say that the BIA should have applied in its own determination of torture and acquiescence. To confirm, we're talking about the standards the BIA should apply in their review. Okay. And that's what Myrie talked about. So do you agree with the holding in Myrie regarding the Board's duties? I want to preface that to say I haven't read Myrie, but if the fundamental question is factual, a clear error is the factual findings about what could happen. Okay. I don't mean to interrupt you. We don't need to rehash that one. Yes. I just wondered if you had a position on Myrie. Yes. And then briefly, of course, squaring acquiescence, this Court's decision in Scientha and Turkson is a bit of a different matter, but yes. Finally, just respect to the due process claim. My colleague has conceded that. We do feel that he failed to exhaust that. And, therefore, we ask this Court would conclude as in Scientha that this is an unreviewable factual determination as we set forth in our brief. Thank you. Your Honor, I don't have much to add based on your questions. I think that those questions are proper because the opinion is not only just confusing, it's just very brief and it doesn't articulate really what the thinking is in terms of the factual versus the legal standard that the Court has to follow under Turkson. It just jumbles them up in one paragraph and doesn't explain if the Board member actually examined the legal prong of the CAT analysis in a way that would allow you to just affirm the decision. There's not enough analysis or an explanation as to how the Board member discusses only the acquiescence in those terms. And, again, doesn't even discuss the Suarez willful blindness standard that the IJ actually did. The IJ went and explained that there was a split in the circuits and she cited that in the opinion. In contrast, the single Board member didn't and only substitutes his or her decision for the IJs without any explanation as to the legal standard applicable in this case. So, for those reasons, we ask this Court to remand the case to the Board. Thank you very much. Thank you very much, Your Honor. We will say hello to the lawyers and then we'll go to the next case.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Pamela A. Harris